## JONAS R. PERKINS *vs.* JOSHUA WEBSTER.

On the 19th of November, 1846, P. C. K. and J. H. K. traders and partners, sold out their entire stock in trade to J. K., their brother, and took his promissory notes therefor: On the 27th, the property so sold was attached by creditors of P. C. and J. H. K., resident in other states, on suits commenced in the circuit court of the United States: On the 3d of December, an arrangement was made, in pursuance of which, the attaching creditors discharged their attachments, and the notes of J. K. were placed in the hands of the defendant, as a trustee, to receive the amount thereof, and, out of the proceeds, to pay such attaching creditors seventy-five per cent of their demands, and, if there should be any surplus remaining, to divide the same among certain other creditors of P. C. and J. H. K., who had consented to such arrangement, in proportion to their respective demands: On the 23d of December, P. C. and J. H. K. took the benefit of the insolvent law, and on the 4th of January, 1847, a conveyance of all their estate was made to the plaintiff, as assignee: In an action of trover by the plaintiff, as such assignee, to recover the value of the notes, it was held, that the transfer of the same, by the insolvents, to the defendant, was not void, as an intended preference of a preëxisting creditor, in contravention of the act of 1841, *c.* 124, § 3.

THIS was an action of trover, commenced on the 21st of January, 1847, by the plaintiff, as the assignee of Peter C. and John H. Kimball, insolvent debtors, to recover the value of three promissory notes, for the payment, in the whole, of $1400, signed by Jedediah Kimball, payable to his own order, and indorsed by him, which, the plaintiff alleged, were the property of the insolvents.

The plaintiff, as assignee, claimed to recover the value of the notes, on the ground, that they had been conveyed and disposed of by the insolvents, within six months previous to their insolvency, for the purpose of thereby giving a preference to certain preëxisting creditors, in contravention of the provisions of the act of 1841, *c.* 124, § 3.

At the trial, which was in this court before *Wilde*, J., after both parties had introduced their evidence, it was agreed, that the case should be reported for the whole court, who should draw such inferences from the facts stated, as a jury might do, and should enter such judgment, or make such disposition of the case, as they should think proper.

From the report signed by the judge, the case appeared to be as follows: —

On the 20th of November, 1846, the insolvents, who were traders and partners, sold out their entire stock in trade to their brother, Jedediah Kimball, and received of him in payment therefor the three promissory notes demanded in this action. Immediately upon this transaction, two creditors of the insolvents, citizens of other states, namely, William Fletcher, of Providence, Rhode Island, and Dennis Brigham, of the city of New York, commenced suits against them in the circuit court of the United States, and caused the property sold by the insolvents to Jedediah Kimball, to be attached thereon, and taken into the custody of the marshal.

An arrangement was thereupon entered into between the insolvents, the attaching creditors, certain other creditors of the insolvents, and the defendant, by which, on the 3d of December, 1846, the attachments were discharged, and the notes in question were placed in the hands of the defendant, as trustee, to receive the amount of the same as they should fall due, and from the proceeds thereof to pay the attaching creditors seventy-five per cent of their demands, and to distribute the balance, if any should remain, amongst the other creditors of the insolvents, who were parties to the arrangement, in proportion to their respective demands.

The defendant, on the same day, signed a receipt for the notes, in which he agreed to hold and dispose of them for the purpose above mentioned ; the creditors, who had consented to the arrangement, signed an agreement to receive fifty per cent of their respective demands against the insolvents ; and Jedediah Kimball signed a discharge and release to the marshal for the property attached. The suits in the circuit court were prosecuted to final judgment and execution.

In order to prove this arrangement, and to show the character of it, the plaintiff called William A. White, as a witness, who testified, that he was formerly a creditor of the insolvents, but had sold out his interest ; that in the latter part of November, 1846, one of the insolvents called upon him in Boston, and stated to him, that their business was involved, and that they had sold out their entire stock to Jedediah

Kimball, their brother, and had received therefor the three notes for which this action was brought; that the defendant called on him the same day, and said that the business, he thought, could be settled without litigation, if the creditors would take fifty cents on a dollar, and that he was willing to take the property and pay the dividends; but the defendant refused to guaranty such payment, namely, of fifty per cent, or to give any written declaration of the purpose for which he held the property; that the signatures of the Boston creditors were obtained to such an agreement; that at the time of this conversation, the stock of the insolvents was attached and in the custody of the marshal; and that the object of Kimball's coming to Boston, was to procure a discharge of the attachment.

On the 23d of December, 1846, the insolvents made their application for the benefit of the insolvent law; and, on the 4th of January, 1847, the plaintiff, as assignee, received an assignment of their estate.

It appeared, that the note on which Fletcher's suit was brought originally belonged to the defendant, and had been negotiated by him to Fletcher; and the plaintiff contended, that the note was so negotiated, for the purpose of enabling the defendant to bring an action thereon, in the name of Fletcher, and thus to obtain a preference; but no evidence was produced to establish this position.

The plaintiff, by his agent, made a demand of the notes sued for, on the 25th of March, 1847, of the defendant, who declined to deliver them; saying, that the notes were claimed by two parties, and he had consulted the counsel of the other parties, and should be sued by them if he gave up the notes to the plaintiff; and, that it was better to fight a lawsuit with funds than without them.*

The defendant admitted, that he had received the amount of two of the notes, as they became due, being about the sum

---

* No question was made, at the argument, as to the validity or sufficiency of the demand.

of $610, but that he had been unable to obtain payment of the third, in consequence of the insolvency of the maker. The demands of the attaching creditors exceed all that the defendant has ever received or is likely to receive on these notes.

The case was argued in writing, by *T. G. Coffin*, for the plaintiff, and by *H. G. O. Colby*, for the defendant.

SHAW, C. J.   This action of trover is brought by the assignee of certain insolvent debtors, upon the ground, that the notes which are the subject of the action, were good and valid notes belonging to the insolvents, who had a disposing power over them, and that the insolvents, within six months, next before the commencement of proceedings in insolvency, voluntarily gave the notes to the defendant, in trust, to collect the proceeds, and pay first seventy-five per cent of the debts of the two attaching creditors, who had suits pending in the courts of the United States, in full satisfaction of their debts, and then, if there should be any surplus, to pay it to certain other creditors named.   The ground of the action is, that this transaction was intended as a fraudulent preference ; and that as such, it was void against the creditors of the insolvents.   To determine this question, it is necessary to consider what was the origin of these notes ; the relations of the parties when the notes were placed in the hands of the defendants ; the motives to that transaction ; and the purpose to be accomplished by it.

After the sale by the insolvents to their brother of their entire stock, for which they took the purchaser's negotiable notes, the same goods were attached at the suits of two of the insolvents' creditors, living out of the state, by process from the circuit court of the United States, on the ground, that the sale was fraudulent and void against creditors.   As the law then stood, such an attachment, by process from the United States courts, would not be dissolved by the operation of the insolvent law of this state, if the actions were maintained, and the attaching creditors could prove, that the sale was made for the purpose of delaying or defrauding creditors.

Those creditors held demands constituting a good cause of action. The fact, that the debtors sold out their entire stock, to a near relation, in consideration of negotiable notes only, without indorser or surety, was a strong badge of fraud, with which the attaching creditors would have assailed that conveyance. But, if that sale could have been avoided, and set aside, so that Jedediah, the purchaser, could not hold the goods, his notes would be without consideration, and void in the hands of the vendors; who could make no use of them in settling with their creditors, unless the attachment of the goods should be withdrawn. The debtors then had an interest in procuring those attachments to be withdrawn, and the attaching creditors were probably willing to abate something of their demands, in order to avoid the expense of litigation and the risk of ultimate failure. The sale was good and valid, as between the parties, and could only be avoided by a creditor. Under these circumstances, it was agreed, as one entire transaction, in which the stipulations on the one side must be taken in connection with those on the other, as mutual considerations and motives, that the attachments should be withdrawn, by which the sale would be affirmed, the notes made good, and the power of the debtors over them complete. It was also agreed, that the notes should be placed in the hands of a third person, to be collected by him, and the proceeds applied to the payment of seventy-five per cent of the debts of the attaching creditors, and the surplus, if any, to the payment of other creditors. To the extent of the claims of these attaching creditors, the defendant became responsible, at the time of taking the notes; they were delivered to him on that trust; and so far he holds them for value; and it is conceded, that these demands exceed all that the defendant has received on the notes, and probably their value.

The suits of the attaching creditors formed a compulsory process, to enforce payment from the debtor, accompanied by an attachment, which, if valid, would deprive them wholly of their disposing power over the notes, held by them; nor did the attaching creditors relinquish that process, until the

delivery of the notes to the defendant, to be held by him for their use as a substituted security. It appears to the court, that, before the right of the plaintiff, as assignee, accrued, the insolvents had disposed of their notes to a holder for value, as a trustee for those who were proceeding by compulsory measures to enforce payment of their debts, with a reasonable chance of success; that such transfer, instead of being made with a view of giving an unjust and fraudulent preference to those creditors, was made as a composition, by which satisfaction of the whole was obtained by means of a payment of part, and to relieve themselves from the pressure of a claim, which, if it could be successfully enforced, would have deprived them of all control and benefit both from the goods and notes.

Perhaps it may be suggested, that if the sale of the goods by the insolvents, to their brother Jedediah, was fraudulent against those attaching creditors, it was equally fraudulent against all creditors, and that after the withdrawal of the attachments, the goods might have been taken by the assignee as the representative of all the creditors. But a moment's reflection suggests the answer, which is, that such a sale is voidable only, and not void; that it is at the option of creditors to disaffirm it, and attach the goods, or affirm it, and take the consideration given for them. By claiming the notes, the assignee makes his election to affirm the sale and hold it valid, and therefore he cannot now disaffirm and hold it void. But if it were otherwise, it would not aid him in this action of trover, to recover the notes.

If it be said, that the assignment of these notes was to pay other creditors than those, who, in effect, paid value for them by relinquishing their attachments, it may be answered, that there may be no surplus; but if there were, it could not be recovered in this action; and whether any other would lie, as for money had and received, we are not now called upon to decide.

It was intimated, that the note held by one of the attaching creditors once belonged to the defendant; that, in fact,

41 *

it belonged to him, being a Massachusetts man, at the time the suit was commenced; and that it was sued in the name of a person residing in another state, in the United States court, in fraud of the law ; but there is no proof to substantiate that fact, and it is useless therefore to consider what its effect would be, if proved.

*Judgment for the defendant.*